**EASTERN WINE CORP., Plaintiff-Appellee,**

v.

**NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.**

**No. 109, Docket 29738.**

United States Court of Appeals Second Circuit.

Argued Oct. 28, 1965.

Decided Jan. 19, 1966.

Bert Cotton, John P. Wourms, Paul M. Godlin, Rein, Mound & Cotton, New York City, for plaintiff-appellee.

Jerome H. Shapiro, Gerald E. Dwyer, New York City, for defendant-appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Defendant, New York Central Railroad Company, appeals from a judgment against it in favor of Eastern Wine Corp., consignee of a quantity of wine, for the value of the contents of one tank of two in a freight car, shipped full but found empty when it reached the consignee's tracks. The judgment was entered after trial before Judge Cannella in the Southern District of New York, jury waived. We hold the result correct and affirm the judgment.

In rendering judgment in favor of Eastern Wine Corp. the judge found that although the Railroad had effected a delivery, it was liable as gratuitous bailee for the loss of the tank of sherry wine. The railroad was terminal carrier by rail of a shipment of wine in a private tank car, originating in California. The car arrived at Bronx Terminal Market on May 17, 1960, and plaintiff was notified promptly by telephone, and on May 18 a freight bill was forwarded by mail. Plaintiff leased tracks in the area. The track at the market was owned by the City of New York and leased to the railroad. Since plaintiff's tracks were filled, the railroad placed the car on holding tracks at the market, awaiting time when it could place the car on plaintiff's tracks.

On May 20 one of the railroad's employees found a seal broken on the car, and replaced it. On May 23 both seals (one for each door) were found broken, and were replaced. No inspection of the tanks was made or requested by the railroad. Upon plaintiff's taking the car on its tracks May 23, the wine in question was found to be missing from one of the tanks in the car. Plaintiff had not been informed of any of the broken seals, although police were informed.

Plaintiff's first cause of action is based on 49 U.S.C. § 20(11) which, with qualifications not here applicable, imposes on a common carrier insurer's liability for any loss to property in interstate transportation. The other causes of action are based on state law imposing liability on a bailee for losses arising out of his negligence. The action was brought in the State Court. Defendant removed the case to the United States District Court.

■ Whether plaintiff was required to show negligence depends on whether delivery was effected prior to the loss of the goods. See Republic Carloading & Distrib. Co. v. Missouri Pacific R.R., 302 F.2d 381, 386 (8 Cir. 1962). Under the applicable tariff, the railroad, unable to make actual delivery, could effect constructive delivery by submitting written notice that it was unable to deliver and was holding the car; after the passage of an agreed two day period of free time, its liability under the bill of lading would be that of a warehouseman rather than of a carrier. In this case, if the telephone notification of arrival and the subsequent mailing of the freight bill should be considered to constitute such written notice, the period of free time would have commenced at 7 a. m. the following day, May 19, and the nature of the railroad's liability would have changed forty-eight hours later at 7 a. m. on May 21.

The court below did not address itself to this question since it found an actual delivery on the basis of a tariff provision that delivery of a private car would be complete when the car was placed on a private track with due notice to the consignee. This does not follow, however, for the tariff provision is limited to private cars and private sidings in the same ownership. Eastern did not own the holding tracks, the city did and leased them not to Eastern, but to the railroad. Delivery as contemplated here was to Eastern's siding, track B within the Market building, where facilities existed to unload the bonded cargo. See the opinion of the New York Court of Appeals, Cardozo, J., in New York C. & H. R.R. Co. v. General Electric Co., 219 N.Y. 227, 114 N.E. 115, cert. den. 243 U.S. 636, 37 S.Ct. 400, 61 L.Ed. 941 (1917), Secretary of Agriculture of United States v. United States, 347 U.S. 645, 647, 74 S.Ct. 826, 98 L.Ed. 1015 (1954).

■ The railroad likewise failed to make out a constructive delivery since the tariff provision for written notice of placement of the car must be strictly complied with. Empire Box Corporation of Stroudsburg v. Delaware, L. & W. R. Co., 171 F.2d 389, 6 A.L.R.2d 874 (2 Cir. 1948). Here the freight bill relied on as notice fails to state the holding location, and indeed is dated from the Westchester Ave. Station, a mile away from the Bronx Terminal. Hence, the railroad still held the car as a carrier. But even if it were not, it was at least a warehouseman bound to use ordinary care.

We have no doubt that in view of the nature of the cargo the failure to notify the consignee of the successive instances of breaking of the seals or otherwise seeking to protect the cargo after the first break, other than by notice to the city police, breached the railroad's duty of ordinary care.

It is unnecessary, therefore, in our view of the case, to determine whether the wine was stolen during a period when the carrier as carrier still had an insurer's responsibility, or if the notice be considered sufficient under the tariff, after it had ceased to hold as carrier and commenced to hold as warehouseman or bailee for mutual benefit. In either case it is liable for the loss. We do not reach the question of whether, if an actual delivery had been effected, the railroad would have breached the duties of a gratuitous bailee. The judgment is affirmed.